IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, <br>                           Plaintiff, <br><br> v. <br><br> JAMES HARVEY MASON, <br><br>                           Defendant, <br><br> THE JHM FOREX ONLY POOL (f/k/a THE JHM FOREX ONLY POOL, LP), and FOREX TRADING AT HOME, <br><br>                        Relief Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )   No. 13 CV _____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF
AND PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

The U.S. Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, hereby alleges as follows:

**I.      SUMMARY**

1.      Beginning in at least July 2010, James Harvey Mason ("Mason") fraudulently solicited, accepted, and pooled at least $1,500,000 from at least 60 individuals and used the funds to trade off-exchange foreign currency contracts ("forex") in two commodity pools, the JHM Forex Only Pool (f/k/a The JHM Forex Only Pool, LP) ("JHM") and Forex Trading at Home ("FTAH").

2.      When soliciting and accepting funds for and/or operating the pools, Mason provided participants and prospective participants with written documents that intentionally or

recklessly contained materially false and misleading statements and failed to disclose material facts, including: (a) telling participants they would not lose their principal; (b) claiming that participants would make outrageous profits, as much as either 340% or 500% annually; (c) misrepresenting the risk of loss associated with forex trading; and (d) failing to disclose Mason's felony wire fraud conviction in connection with the purchase and/or sale of commodities in 2000.  Additionally, Mason appears to have misappropriated at least $600,000 of pool participants' funds and used such funds for purposes other than for forex trading.  Mason also failed to register with the Commission as a commodity pool operator.

3. By engaging in this conduct and the conduct further described herein, Defendant has engaged, is engaging, or is about to engage in conduct in violation of the Commodity Exchange Act ("Act") 7 U.S.C. §§ 1 *et seq.* (Supp. IV 2011).  Specifically, by cheating or defrauding pool participants, deceiving or attempting to deceive pool participants, and by misappropriating participant funds, Defendant has engaged in conduct in violation of Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§6b(a)(2)(A), (C) (Supp. II 2009),  Sections 4m(1) and 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m(1), and 6*o*(1)(A), (B) (2006),[1] and Commission Regulation ("Regulation") 5.3(a)(2), 17 C.F.R. § 5.3(a)(2) (2012).

4. Unless restrained and enjoined by this Court, the Defendant is likely to continue engaging in the acts and practices alleged in this complaint or in similar acts and practices.

---

[1] All Sections of the Act that have been amended, in relevant part, by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), are cited as follows: "Section x of the Act, 7 U.S.C. § x (Supp. IV 2011)."  All Sections of the Act that have been amended, in relevant part, by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 (the "CRA")), §§ 13102-13204, 122 Stat. 1651 (enacted June 18, 2008), but not by the Dodd-Frank Act, are cited as follows: "Section x of the Act, 7 U.S.C. § x (Supp. II 2009)."  All Sections of the Act that were neither amended by the CRA nor Dodd-Frank Act in relevant part are cited as follows:  "Section x of the Act, 7 U.S.C. § x (2006)."

5. Accordingly, the Commission brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), to enjoin Defendant's unlawful acts and practices and to compel his compliance with the Act. In addition, the Commission seeks restitution, rescission, civil monetary penalties, disgorgement and such other equitable relief as this Court may deem necessary or appropriate.

## II.  JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2006), which authorizes the Commission to seek injunctive relief in the proper district court of the United States against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order promulgated thereunder.

7. The Commission has jurisdiction over the forex solicitations and transactions at issue in this case pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (Supp. II 2009), and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (Supp. II 2009).

8. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because Defendant transacted business in this District, and acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

## III.  THE PARTIES

9. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

10. Defendant **James Harvey Mason** resides in Graham, North Carolina, and also has an address and conducts business in Mill Spring, North Carolina. Mason has never been registered with the Commission in any capacity. In 2000, Mason was convicted of wire fraud in the District of South Carolina and sentenced to 18 months imprisonment. *United States v. Mason,* No. 99-cr-00231-JFA (D.S.C. Feb. 8, 2000), *aff'd* 41 F. App'x 612 (4th Cir. 2002).

11. Relief Defendant **The JHM Forex Only Pool (f/k/a The JHM Forex Only Pool, LP)**, is a commodity pool with business addresses in Snow Camp, Mill Spring, and Hendersonville, North Carolina. JHM operates through a maze of interrelated companies including The JHM Forex Only Pool Irrevocable Trust and JHM Holdings, LLC, all of which are wholly owned and operated by defendant Mason. JHM has never been registered with the Commission in any capacity. As a Relief Defendant JHM holds pool participants' funds in constructive trust for the participants. Accordingly, plaintiff seeks an order of disgorgement against JHM of all assets and funds that are directly traceable to Defendant Mason's unlawful activities.

12. Relief Defendant **Forex Trading at Home** is a commodity pool with a business address in Graham, North Carolina. Through a maze of interrelated companies, including "Forex Trading at Home Association," "Forex Trading at Home Partners," and "FTAH Partners," it is wholly owned and operated by defendant Mason. Mason also markets a forex trading system through FTAH. FTAH has never been registered with the Commission in any capacity. As a Relief Defendant FTAH holds pool participants' funds in constructive trust for the participants. Accordingly, plaintiff seeks an order of disgorgement against FTAH of all assets and funds that are directly traceable to Defendant Mason's unlawful activities.

## IV.     STATUTORY BACKGROUND

13. A "commodity pool" is defined in Section 1a(10)(A) the Act, 7 U.S.C. §1a(10)(A) (Supp. IV 2011), as any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading commodity interests, including foreign currency agreements, contracts, or transactions offered to, or entered into with, non-Eligible Contract Participants ("ECPs").

14. An ECP is defined by the Act, in relevant part, as a commodity pool that (a) has total assets exceeding $5,000,000, and (b) every participant in the commodity pool is otherwise an eligible contract participant. *See* Section 1a(18)(A)(iv) of the Act, 7 U.S.C. § 1a(18)(A)(iv) (Supp. IV 2011). An ECP is further defined by the Act, in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of (a) $10 million, or (b) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a(18)(A)(xi) of the Act, 7 U.S.C. § 1a(18)(A)(xi) (Supp. IV 2011).

15. A "commodity pool operator" ("CPO") is defined in Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2012), as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is <u>not</u> an ECP as defined in Section 1a(18) of the Act, 7 U.S.C. §1a(18) (Supp. IV 2011), and that engages in retail forex transactions.

16. A "participant" is defined in Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2012), as any person who has any direct financial interest in a commodity pool.

17. Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2012) defines a "retail forex transaction" as any off-exchange agreement, contract or transaction in foreign currency offered to non-ECPs.

## V. FACTS

18. Beginning in at least July 2010 and continuing through at least December 2012, Mason solicited individuals to become participants in the JHM pool. Mason also permitted and encouraged other persons to solicit participants in the JHM pool in a manner akin to a multi-level marketing scheme. Based upon these solicitations, at least 60 individuals invested at least $1,500,000 with JHM. At least $1,000,000 of these funds were pooled and placed in a forex trading account in JHM's name.

19. In about September 2012, Mason began to solicit individuals directly to become participants in the FTAH pool. Mason also permitted and encouraged other individuals to solicit participants in the FTAH pool. Mason marketed FTAH to at least some participants as a trading system, but claimed that the funds used to purchase the trading system would be placed in the FTAH pool and used for forex trading. At least $136,000 of the funds received from FTAH participants were pooled and placed in a forex trading account in FTAH's name.

20. As described in further detail below, Mason's forex trading resulted in overall losses. In addition, from July 2010 to the present, Mason misappropriated at least $600,000 of pool participants' funds and used such funds for purposes other than for forex trading.

### A. Misrepresentations About Risk and Profit

21. In written communications with participants in both the JHM or FTAH pools, Mason made numerous fraudulent misrepresentations and omissions. For example, in a document styled "Operations Policies" dated June 11, 2012, which Mason sent to JHM pool participants, Mason represented that he could guarantee participants' funds, and that participants should consider his assurances "as a written guarantee" that their funds were protected from loss by "either the Fund Managers earnings, or future earnings" or other unidentified assets.

22. In an October 4, 2012, email to JHM pool participants, Mason promised participants that if he lived until September 2013, all participants would be able to withdraw their pool funds. Implicit in this statement was that participants would not lose any money as a result of Mason's trading forex.

23. On October 9, 2012, Mason sent an email to JHM participants stating, among other things, that he could "guarantee 100% of investors personally invested capital."

24. In that same email, Mason provided an attached spreadsheet describing expected profits from investments for a period of five years. According to this spreadsheet, an investment of $5000 was expected to grow more than 500% annually, and after five years, the investment was expected to be worth more than $100 million.

25. Mason made similar representations with respect to the FTAH pool. For example, in a July 26, 2012, email, Mason guaranteed that if purchasers of the trading system marketed through FTAH lost money within their first 90 days of trading, he would refund the full purchase price. On September 9, 2012, Mason further represented that his FTAH trading system was so effective that it would make purchasers "independent" and would help anyone "more than any education they could ever attain."

26. In an August 29, 2012, email to FTAH participants, Mason promised to grow a member's $1,000 deposit through trading activities into a total of $4,400 within a time period of 260 trading days, or one year time frame, equal to a 340% annual return.

27. In a biography he provided to participants, Mason described himself as a former cotton mill manager and owner with over thirty-five years of experience trading commodity futures and options. Mason did not disclose that in 2000 he was convicted of wire fraud in

7

connection with certain cotton transactions, or that he was sentenced to eighteen months in prison and three years of supervised release.

28. Mason knew or recklessly disregarded the fact that the statements in paragraphs 21 through 27 were false. Mason knew or recklessly disregarded the fact that forex trading is extremely risky and that it is not possible to guarantee investment performance. Mason knew or recklessly disregarded the fact that it is impossible to predict future trading results or to guarantee that a particular trading program would result in profits for its user. He also knew or recklessly disregarded the fact that his forex trading, in fact, was not on the whole profitable, and that the small profits that he did occasionally obtain were much more modest than the profits he promised to participants. Mason also knew of his conviction for wire fraud but intentionally failed to disclose it to participants and prospective participants.

### B. Misappropriation of Participant Funds

29. Mason pooled and placed at least $1,000,000 in participant funds in a forex trading account in JHM's name. He pooled and placed at least $136,000 in participant funds in a forex trading account in FTAH's name. Between July 2010 and January 2013, Mason lost in the aggregate over $1,000,000 in realized and unrealized losses in the forex trading accounts he has controlled. In addition to the over $1.1 million that Mason pooled and placed in the JHM and FTAH trading accounts, Mason misappropriated at least $600,000 of additional pool participants' funds, which were never placed in the forex trading accounts and instead used for purposes other than for forex trading.

### C. The Nature of Defendant's Transactions

30. Defendant and Relief Defendants are not financial institutions, registered brokers or dealers, insurance companies, financial holding companies, or investment bank holding

8

companies, nor are they associated persons of financial institutions, registered brokers or dealers, insurance companies, financial holding companies, or investment bank holding companies.

31. Defendant and Relief Defendants and most, if not all, of the participants in the pools were and are not "eligible contract participants," as that term is defined in Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (Supp. IV 2011).

32. The forex transactions conducted by Defendant were entered into on a leveraged or margined basis, and they neither resulted in delivery of actual currency within two days nor created an enforceable obligation to deliver between a seller and a buyer that had the ability to deliver and accept delivery, respectively, in connection with their lines of business. Rather, these forex contracts purportedly remained open from day to day and ultimately were offset without anyone making or taking delivery of actual currency or facing an obligation to do so.

## VI. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

**Violations of Section 4b(a)(2)(A), (C) of the Act:
Fraud and Misappropriation in Connection with Forex Transactions**

33. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

34. Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 4b(a)(2)(A), (C) (Supp. II 2009), make it unlawful for any person: (A) to cheat or defraud or attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to

9

paragraphs (1) and (2) of Section 5a(g), that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market.

35. Pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (Supp. II 2009), Section 4b of the Act applies to Mason's forex transactions "as if" they were a contract of sale of a commodity for future delivery.

36. Beginning in at least July 2010, Mason violated Section 4b(a)(2)(A) and (C) of the Act, in that he cheated or defrauded, or attempted to cheat or defraud, and willfully deceived, or attempted to deceive, pool participants by, *inter alia*, misappropriating pool participants' funds, misrepresenting the profits and risks of forex trading and that a system he developed could generate guaranteed profits, and by failing to disclose his own criminal conviction for wire fraud.

37. Mason engaged in the acts and practices described above willfully or with reckless disregard for the truth.

38. Each misappropriation of funds and each material misrepresentation or omission, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(A) and (C) of the Act.

## COUNT II

### Violations of Section 4*o*(1)(A) and (B) of the Act:
### Fraud by a CPO

39. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

40. Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2006), in relevant part, makes it unlawful for a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly: (A) to employ any device, scheme, or artifice to defraud any participant; or (B) to engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any participant.

10

41. Since October 18, 2010, Mason acted as a CPO of both JHM and FTAH in that he engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received funds, securities, or property from others for the purpose of trading in commodities for future delivery on or subject to the rules of any contract market.

42. Since October 18, 2010, Mason violated Section 4*o*(1)(A) and (B) of the Act, in that, while acting as a CPO, he directly or indirectly employed a device, scheme, or artifice to defraud pool participants and engaged in transactions, practices, or a course of business which operated as a fraud or deceit upon pool participants by, *inter alia*, misappropriating pool participants' funds, misrepresenting the profits and risks of forex trading and that a system he developed could generate guaranteed profits, and by failing to disclose his own criminal conviction for wire fraud.

43. Mason engaged in such acts by use of the mails or other means or instrumentalities of interstate commerce.

44. Each misappropriation of funds and each material misrepresentation or omission, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4*o*(1)(A) and (B) of the Act.

### COUNT III

### Violations of Section 4m(1) of the Act and Regulation 5.3(a)(2)(i)
### Failure to Register as a CPO

45. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

46. With certain exemptions and exclusions not applicable here, all CPOs are required to be registered with the Commission, pursuant to Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2012). Section 4m(1) further makes

it unlawful for any CPO to make use of the mails or other means or instrumentalities of interstate commerce in connection with its CPO business unless registered with the Commission pursuant to Section 4m(1) of the Act. Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2012), required CPOs trading forex to register with the Commission as of October 18, 2010.

47. Since October 18, 2010, Mason violated Section 4m(1) of the Act and Regulation 5.3(a)(2)(i), in that he acted as a CPO of both JHM and FTAH without the benefit of registration with the Commission as a CPO, and in connection with his CPO businesses, made use of the mails or other means or instrumentalities of interstate commerce.

48. Since October 18, 2010, each use of the mails or other means or instrumentalities of interstate commerce in connection with Mason's operation as a CPO without proper registration, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006). Each day that Mason failed to register as a CPO since October 18, 2010, is alleged as a separate and distinct violation of Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2(i) (2012).

## VII. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers:

A. Find Defendant liable for violating Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (Supp. II 2009) and Sections 4m(1) and 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m(1), and 6*o*(1)(A) and (B) (2006); and find Defendant liable for violating Regulation 5.3(a)(2), 17 C.F.R. §5.3(a)(2) (2012).

B. Enter an *ex parte* statutory restraining order and an order of preliminary injunction pursuant to Section 6c(a) of the Act 7 U.S.C. § 13a-1(a) (Supp. IV 2011), restraining

12

Defendant and Relief Defendants and all persons insofar as they are acting in the capacity of Defendant's and/or Relief Defendants' agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant and Relief Defendants who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1. destroying, mutilating, concealing, altering, or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendant and/or Relief Defendants, wherever located, including all such records concerning Defendant's and/or Relief Defendants' business operations;

2. refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendant and/or Relief Defendants, wherever located, including all such records concerning Defendant's and/or Relief Defendants' business operations; and

3. withdrawing, transferring, removing, dissipating, concealing, or disposing of, in any manner, any funds, assets, or other property, wherever situated, including, but not limited to, all funds, personal property, money, or securities held in safes or safety deposit boxes and all funds on deposit in any financial institution, futures commission merchant, bank, credit union, or savings and loan account held by, under the actual or constructive control of, or in the name of Mason, JHM, or FTAH whether individually, jointly or otherwise;

C. Enter an order directing that Defendant and Relief Defendants make an accounting to the Court of all of Defendant's and Relief Defendants' assets and liabilities, together with all funds Defendant and/or Relief Defendants received from and paid to pool participants and other persons in connection with forex transactions, or purported forex transactions, including the names, mailing addresses, email addresses, and telephone numbers of any such persons from whom they received such funds from July 2010 to the date of such accounting, and all disbursements for any purpose whatsoever of funds received from pool participants, including salaries, commissions, fees, loans, and other disbursements of money and property of any kind, from July 2010 to and including the date of such accounting;

D. Enter an order requiring Defendant and Relief Defendants immediately to identify and provide an accounting for all assets and property that they currently maintain outside the United States, including, but not limited to, all funds on deposit in any financial institution, futures commission merchant, bank, or savings and loan account held by, under the actual or constructive control of, or in the name of Mason, JHM or FTAH, whether jointly or otherwise, and requiring them to repatriate all funds held in such accounts by paying them to the Registry of the Court, or as otherwise ordered by the Court, for further disposition in this case;

E. Enter orders of preliminary and permanent injunction restraining Defendant and all persons insofar as they are acting in the capacity of Defendant's agents, servants, employees, successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendant who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

   1. engaging in conduct in violation of Sections 4b(a)(2)(A) and (C), 7 U.S.C. § 6b(a)(2)(A) and (C) (Supp. II 2009), Sections 4*o*(1)(A) and (B) and 4m(1) of the Act, 7

14

U.S.C. §§ 6*o*(1)(A) and (B), and 6m(1) (2006), and Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2) (2012);

    2.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (Supp. IV 2011), including, but not limited to, trading for themselves or others;

    3.    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2012)) ("commodity options"), security futures products, foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) (Supp. IV 2011)) ("forex contracts") and/or swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47) (Supp. IV 2011) for their own personal account or for any account in which they have a direct or indirect interest;

    4.    having any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts and/or swaps traded on their behalf;

    5.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, forex contracts and/or swaps;

    6.    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts and/or swaps;

    7.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or

15

Case 3:13-cv-00196-GCM   Document 1   Filed 03/27/13   Page 15 of 17

exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

  8. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent, or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012);

 F. Enter an order requiring Defendant and Relief Defendants to disgorge to any officer appointed or directed by the Court, or directly to pool participants, all benefits received, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

 G. Enter an order directing Defendant and Relief Defendants and any successors thereof to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between Defendant and/or Relief Defendants and any of the pool participants whose funds were received by Defendant and/or Relief Defendants as a result of the acts and practices which constitute violations of the Act as described herein;

 H. Enter an order requiring Defendant and Relief Defendants to restore to each pool participant the full amount of his or her original investment;

 I. Enter an order directing Defendant to pay a civil monetary penalty in the amount of not more than the greater of: (1) triple the monetary gain to Defendant for each violation of the Act; or (2) $140,000 for each violation of the Act, plus post-judgment interest;

J. Enter an order requiring Defendant to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

K. Enter an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Dated: __March 27, 2013___                  Respectfully submitted,

/s/ Barry R. Blankfield
Barry Blankfield
Jennifer E. Smiley
Joseph A. Konizeski
Rosemary Hollinger
U.S. COMMODITY FUTURES
TRADING COMMISSION
Division of Enforcement
525 West Monroe Street, Suite 1100
Chicago, IL  60661
(312) 596-0525 (Blankfield)
(312) 596-0530 (Smiley)
(312) 596-0546 (Konizeski)
(312) 596-0714 (facsimile)
bblankfield@cftc.gov
jsmiley@cftc.gov
jkonizeski@cftc.gov