# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | No. 3:13-CV-00196-GCM |
| v. | ) ) ) | |
| JAMES HARVEY MASON, | ) ) ) | |
| Defendant, | ) ) | |
| THE JHM FOREX ONLY POOL (f/k/a THE JHM FOREX ONLY POOL, LP), and FOREX TRADING AT HOME, | ) ) ) ) | |
| Relief Defendants. | ) ) | |

## ~~[PROPOSED]~~ CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF

### I. INTRODUCTION

On March 27, 2013, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint ("Complaint") against Defendant James Harvey Mason ("Mason" or "Defendant") and Relief Defendants The JHM Forex Only Pool (f/k/a The JHM Forex Only Pool, LP), and Forex Trading at Home ("Relief Defendants"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("CEA" or "Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2014) (Dkt. #1). Specifically, the CFTC's Complaint alleged that Defendant has violated, and is continuing to violate, Sections 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) and (C), Sections

1

4m(1), and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6m(1), and 6o(1)(A) and (B), and Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2).

The Court entered an *ex parte* Statutory Restraining Order ("SRO") against Defendant and Relief Defendants on March 27, 2013 (Dkt. #11). The SRO froze assets under Defendant's and Relief Defendants' control, ordered an accounting of assets, permitted CFTC access to all of Defendant's and Relief Defendants' books and records, prohibited the destruction of documents, and appointed Joseph W. Grier III, of Grier, Furr & Crisp, P.A. as the Receiver to, *inter alia,* take exclusive custody, control, and possession of all funds, property and other assets in the possession or control of the Defendant and Relief Defendants, and to perform all acts necessary to hold, manage, and preserve the value of such assets (collectively, the "Receivership Estate").

The Court subsequently entered an Order of Preliminary Injunction ("Preliminary Injunction") against Defendant and Relief Defendants on May 22, 2013 (Dkt. #22). The Preliminary Injunction continued the relief granted by the SRO, additionally required the Defendant and Relief Defendants to submit an accounting, and prohibited the Defendant from committing further violations of the Act.

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant and Relief Defendants without a trial on the merits or any further judicial proceedings, Defendant and Relief Defendants:

1. Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief ("Consent Order");

2. Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the

Commission or any member, officer, agent or representative thereof, or by any other person, including the court-appointed receiver in this case, to induce consent to this Consent Order;

3.    Acknowledge service of the summons and Complaint;

4.    Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C);

5.    Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1, *et seq.*;

6.    Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, amended, 7 U.S.C. § 13a-1(e);

7.    Waive:

(a) any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.*, relating to, or arising from, this action;

(b) any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) any and all rights of appeal from this action;

8.     Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant or Relief Defendants now or in the future reside outside the jurisdiction of this Court;

9.     Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waives any objection based thereon;

10.     Agree that neither they, nor any of their agents or employees under their authority or control, shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party. Defendant and Relief Defendants shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

11.     Admit to all of the findings made in this Consent Order and all of the allegations in the Complaint, including jurisdiction and venue. Further, Defendant and Relief Defendants agree and intend that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendant and Relief Defendants; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a, and/or Part 3 of the

Regulations, 17 C.F.R. §§ 3.1 *et seq.*; and/or (c) any proceeding to enforce the terms of this Consent Order;

12.     Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 47 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and

13.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant and/or Relief Defendants in any other proceeding.

## III. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

## THE PARTIES AGREE AND THE COURT HEREBY FINDS:

### A. Findings of Fact

#### 1. The Parties To This Consent Order

14.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.*

15.     Defendant **James Harvey Mason** resides in Graham, North Carolina, and also has an address and conducts business in Mill Spring, North Carolina. Mason has never been registered with the Commission in any capacity. Mason is facing a concurrent criminal prosecution in *United States v. James Harvey Mason,* Case No.: 3:14-cr-122-FDW, filed in the

U.S. District Court for the Western District of North Carolina, on charges of securities fraud conspiracy and filing a false tax return arising out of the same or similar conduct as alleged in the Complaint. In June, 2014, Mason pled guilty to single counts of securities fraud conspiracy and filing a false federal tax return for tax year 2011.

16.     Relief Defendant **The JHM Forex Only Pool (f/k/a The JHM Forex Only Pool, LP) ("JHM")**, is a commodity pool with business addresses in Snow Camp, Mill Spring, and Hendersonville, North Carolina. Mason was the general partner of The JHM Forex Only Pool, LP, and sole proprietor of JHM. JHM operates through several interrelated companies, including The JHM Forex Only Pool Irrevocable Trust and JHM Holdings, LLC, which were wholly owned and/or operated by defendant Mason. JHM has never been registered with the Commission in any capacity. As a Relief Defendant, JHM held pool participants' funds in constructive trust for the participants.[1]

17.     Relief Defendant **Forex Trading at Home ("FTAH")** is a commodity pool with a business address in Graham, North Carolina. FTAH operates through several interrelated companies, including "Forex Trading at Home Association," "Forex Trading at Home Partners," and/or "FTAH Partners," operated by defendant Mason. FTAH and the interrelated companies were owned by each of their respective partners, members, or investors. However, Mason was the registered agent for most, if not all, of the FTAH companies and he was elected by the members to trade on behalf of FTAH. FTAH has never been registered with the Commission in any capacity. As a Relief Defendant, FTAH held pool participants' funds in constructive trust for the participants.

---

[1] The Receiver has liquidated all remaining assets in the JHM and FTAH pools and consolidated such funds into the Receivership Estate. Therefore, neither JHM nor FTAH currently hold participant funds.

**2. Defendant's Scheme**

18.   Beginning in at least July 2010, Mason acted as a commodity pool operator ("CPO") and in that capacity he fraudulently solicited, accepted, and pooled at least $5,300,000 from approximately 500 individuals and used the funds to trade off-exchange foreign currency contracts ("forex") in two commodity pools, JHM and FTAH (collectively, the "Pools"). Mason was never registered with the Commission as a CPO.

19.   When soliciting and accepting funds for and/or operating the pools, Mason intentionally or recklessly provided participants and prospective participants with written documents that contained materially false or misleading statements and/or failed to disclose material facts, including: (a) telling participants they would not lose their principal; (b) claiming that participants would make expected profits of 1.1% per day and as much as 340% to 500% annually; (c) misrepresenting the significant risk of loss associated with forex trading; and (d) failing to disclose to all investors that he had been convicted of felony wire fraud in connection with the purchase and/or sale of commodities in 2000. Additionally, Mason appears to have misappropriated at least $779,000 of pool participants' funds and used such funds for purposes other than for forex trading.

**3.   JHM and FTAH Pool Solicitations**

20.   Beginning in at least July 2010 and continuing through at least December 2012, Mason solicited individuals to become participants in the JHM pool. Mason also permitted and encouraged other persons to solicit participants in the JHM pool.

21.   In about September 2012, Mason began to solicit individuals directly to become participants in the FTAH pool. Mason also permitted and encouraged other individuals to solicit participants in the FTAH pool. Mason marketed FTAH to at least some participants as a trading

system, but claimed that the funds used to purchase the trading system would be placed in the FTAH pool and used for forex trading.

22.     Based upon Mason's solicitations, approximately 500 participants invested at least $5,300,000 with JHM and FTAH for the purpose of trading forex. However, Mason pooled only a portion of the participant funds and placed them in forex trading accounts in JHM's and FTAH's name. Mason deposited the rest of the participant funds in various bank accounts, withdrew funds as needed to make "Ponzi" payments to other participants, and misappropriated participant funds and used them for personal purposes other than for forex trading.

### 4.  Misrepresentations About Risk and Profit

23.     In written communications with participants in both the JHM or FTAH pools, Mason made numerous fraudulent misrepresentations and omissions. For example, in a document styled "Operations Policies" dated June 11, 2012, which Mason sent to JHM pool participants, Mason represented that he could guarantee participants' funds, and that participants should consider the "Operations Policy document as a written guarantee that their funds personally invested are guaranteed by either the Fund Managers earnings or future earnings, receivables on loans made to other account holders or deposits and assets held in Trust for account holders benefit."

24.     Similarly, in an October 4, 2012 email to JHM pool participants, Mason promised participants that if he lived until September 2013, all participants would be able to withdraw their pool funds. Implicit in this statement was that participants would not lose any money as a result of Mason's trading forex.

25.     On October 9, 2012, Mason sent an email to JHM participants stating, among other things, that he "leaves the majority of performance earnings, less necessary operating capital withdrawals, within the Pool to build a fund that in the future will guarantee one hundred

(100%) percent of investor's personally invested capital," and attached a spreadsheet describing expected profits from investments for a period of five years. According to the spreadsheet, an investment of $5,000 could be expected to grow more than 500% annually, meaning that after five years, the investment was expected to be worth more than $100,000,000.

26.     Mason made similar representations with respect to the FTAH pool. For example, in a July 26, 2012, email, Mason guaranteed that if purchasers of the trading system marketed through FTAH lost money within their first 90 days of trading, he would refund the full purchase price. In an August 29, 2012, email to FTAH participants, Mason promised to grow a member's $1,000 deposit through trading activities into a total of $4,400 within a time period of 260 trading days, or one year time frame, equal to a 340% annual return. On September 9, 2012, Mason further represented that his FTAH trading system was so effective that it "can 'help people' more than any investment they could possibly make anywhere, including getting an account into the Pool. At $500.00 it can help a lot of people become independent," and "It will help any of your friends and any member of your family, possibly more than any education they could ever attain."

### 5. Misrepresentations about Defendant's Background

27.     In a biography he provided to participants, Mason described himself as a former cotton mill manager and owner with over thirty-five (35) years of experience trading commodity futures and options. However, Mason failed to disclose in his biography that in 2000 he was convicted of wire fraud in connection with certain cotton trades, or that he was sentenced to eighteen months in prison and three years of supervised release. Additionally, Mason knew or recklessly disregarded the fact that he did not possess that many years of experience trading commodity futures and options.

### 6. Defendant's Trading Losses, False Account Information, and Misappropriation of Participant Funds

28.     Mason's forex trading in the JHM and FTAH accounts was not profitable. Mason lost over $1,120,000 trading between July 2010 and March 2013. Notwithstanding these trading losses, Mason provided false information to pool participants utilizing internet-based online accounts which falsely indicated that Mason was making a profit in forex trading.

29.     Mason misappropriated at least $779,000 of participant funds and used such funds for purposes other than forex trading. Mason used participant funds to purchase real estate, cars, and to pay his personal credit card bills, among other expenses.

### 7. Defendant's Failure to Register as a Commodity Pool Operator

30.     Defendant has acted as the CPO of JHM and FTAH. With certain exemptions and exclusions not applicable here, all CPOs are required to be registered with the Commission, pursuant to the Act and its Regulations. As described above, Defendant, without being registered with the Commission as a CPO, solicited and accepted funds from pool participants who were not "eligible contract participants" (as defined in the Act), using instrumentalities of interstate commerce, for the purpose of engaging in retail forex transactions in the JHM and FTAH pools.

### 8. Relief Defendants JHM and FTAH Have no Legitimate Interest or Claim to Participant Funds

31.     In order to obtain complete relief for Defendant's defrauded customers, JHM and FTAH are named as nominal or relief defendants. JHM and FTAH are appropriate nominal defendants in this action because they were used as instrumentalities of the Defendant's acts and held assets that rightfully belonged to the Defendant's defrauded investors. JHM and FTAH each possessed funds illegally obtained by the Defendant and, accordingly, had no legitimate interest or entitlement to any pool participant funds. Accordingly, the court-appointed Receiver

has liquidated all remaining assets in the JHM and FTAH pools and consolidated such funds into the Receivership Estate.

## B. Conclusions of Law

### 1. Jurisdiction and Venue

32.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

33.     The Commission has jurisdiction over the forex solicitations and transactions at issue in this action pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C).

34.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the Defendant transacted business in this District, and the acts and practices in violation of the Act occurred within this District.

### 2. Fraud by Material Misrepresentations, Omissions and Misappropriation of Participant Funds

35.     By the conduct described in paragraphs 1 through 31 above, Defendant cheated and defrauded, or attempted to cheat and defraud, and willfully deceived, or attempted to deceive, his pool participants by, among other things, knowingly or recklessly: misappropriating pool participants' funds and making material misrepresentations and omissions of material facts to the prospective and actual pool participants in violation of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§6b(a)(2)(A) and (C).

36.     By the conduct described in paragraphs 1 through 31 above, Defendant used the mails or any means or instrumentality of interstate commerce while acting as a CPO to employ a device, scheme or artifice to defraud his pool participants, and engaged in a transaction, practice or course of business which operated as a fraud upon his pool participants, by, among other things, knowingly or recklessly: emailing written communications containing fraudulent misrepresentations and omissions of material facts to both JHM and FTAH participants and prospective participants, and by misappropriating pool participants' funds, in violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B).

### 3. Defendant Failed to Register as a CPO in Violation of Section 4m(1) of the Act and Regulation 5.3(a)(2)(i)

37.     By the conduct described in paragraphs 1 through 31 above, Defendant, without being registered with the Commission, while acting as a CPO, solicited and accepted funds from pool participants using instrumentalities of interstate commerce, for the purpose of trading forex. Thus, since October 18, 2010, Defendant has acted as the CPO of JHM and FTAH without being registered in violation of Section 4m(1) of the Act, 7 U.S.C. §§ 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. §5.3(a)(2)(i).

### 4. Permanent Injunctive Relief is Necessary and Appropriate

38.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that the Defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations. Permanent injunctive relief is appropriate in this case because the lengthy nature of Defendant's misconduct as alleged, and his previous conviction of wire fraud are suggestive of future violations of the Act.

## IV. PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

39.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant is permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in violation of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. §§6b(a)(2)(A) and (C), including, but not limited to, misappropriating funds and making material misrepresentations and omissions in connection with forex trading;

b.      Acting in any capacity requiring registration with the Commission without the benefit of registration, in violation of Section 4m(1) of the Act, 7 U.S.C. §§ 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. §5.3(a)(2)(i), including, but not limited to, using the mails or other instrumentalities of interstate commerce in connection with CPO business without being registered with the Commission; and,

c.      Using the mails or any means or instrumentality of interstate commerce while acting as a CPO to employ a device, scheme or artifice to defraud any pool participants, and engaging in a transaction, practice or course of business which operates as a fraud upon any pool participants in violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B).

40.     Defendant is also permanently restrained, enjoined and prohibited from directly or indirectly:

a.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a;

b.     Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh)) ("commodity options"), security futures products, swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47), and as further defined by Commission Regulation 1.3(xxx), 17 C.F.R. § 1.3(xxx)), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for his own personal accounts or for any accounts in which he has a direct or indirect interest;

c.     Having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on his behalf;

d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

f.   Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and/or,

g.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

## V. RESTITUTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF

### A.   Restitution

41.   Defendant shall pay restitution in the amount of three million, eight hundred eighty thousand dollars ($3,880,000) ("Restitution Obligation"), plus post-judgment interest, within ten (10) days of the date of the entry of this Consent Order. If the Restitution Obligation is not paid in full within ten (10) days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

42.   The Court finds that the Defendant likely will be obligated to pay restitution to victims of his scheme in the concurrent criminal prosecution in *United States v. James Harvey Mason,* Case No.: 3:14-cr-122-FDW, filed in the U.S. District Court for the Western District of North Carolina ("Criminal Case"). For amounts disbursed to Defendant's pool participants and customers as a result of satisfaction of any restitution ordered in the Criminal Case, the

Defendants shall receive a dollar-for-dollar credit against the Restitution Obligation. Within ten (10) days of disbursement in the Criminal Case to Defendant's pool participants and customers, Defendant shall, under a cover letter that identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 - 21st Street, NW, Washington, D.C. 20581, copies of the form of payment to those pool participants and customers.

43.     The amounts payable to each pool participant and customer shall not limit the ability of any pool participant and customer from proving that a greater amount is owed from Defendant or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any pool participant and customer that exist under state or common law.

44.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each pool participant and customer of Defendant who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the restitution that has not been paid by Defendant to ensure continued compliance with any provision of this Consent Order and to hold Defendant in contempt for any violations of any provision of this Consent Order.

45.     Upon the termination of the Receivership Estate, the Receiver shall provide the Commission with a report detailing the disbursement of any funds to Defendant's pool participants. The Receiver shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**B.    Civil Monetary Penalty**

46.    Defendant shall pay a civil monetary penalty in the amount of one million, six hundred seventy thousand dollars ($1,670,000) ("CMP Obligation"), plus post-judgment interest, within ten (10) days of the date of the entry of this Consent Order. If the CMP Obligation is not paid in full within ten (10) days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

47.    Defendant shall pay his CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK  73169
> Telephone: (405) 954-7262
> Fax:  (405) 954-1620
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact Ms. Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief

Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 – 21st

Street, NW, Washington, D.C. 20581.

## C.   Provisions Related to Monetary Sanctions

48.   Partial Satisfaction: Any acceptance by the Commission of partial payment of

Defendant's CMP Obligation or Restitution Obligation shall not be deemed a waiver of his

obligation to make further payments pursuant to this Consent Order, or a waiver of the

Commission's right to seek to compel payment of any remaining balance.

## D.   Cooperation

49.   Defendant shall cooperate fully and expeditiously with the Commission, including

the Commission's Division of Enforcement, any other governmental agency in this action, and

the Court-appointed Receiver, and in any investigation, civil litigation, or administrative matter

related to the subject matter of this action or any current or future Commission investigation

related thereto.

## VI.  MISCELLANEOUS PROVISIONS

50.   Notice: All notices required to be given by any provision in this Consent Order

shall be sent certified mail, return receipt requested, as follows:

**Notice to Commission:**

> Rosemary Hollinger
> Deputy Director, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 525 West Monroe Street, Suite 1100
> Chicago, Illinois 60661

**Notice to Defendant Mason and Relief Defendants JHM and FTAH:**

> James Harvey Mason
> PID: 0000425831
> P.O. Box 34429
> Charlotte, NC  28234-4429

John A. Fagg, Jr.
Frank E. Schall
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003

**Notice to Receiver:**

Joseph W. Grier, III
Grier, Furr & Crisp, P.A.
101 North Tryon Street, Suite 1240
Charlotte, NC 28246

All such notices to the Commission shall reference the name and docket number of this action.

51.     Change of Address/Phone: Until such time as Defendant satisfies in full his CMP Obligation and Restitution Obligation as set forth in this Consent Order, Defendant shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

52.     Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

53.     Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

54.     Waiver: The failure of any party to this Consent Order or of any participant at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or participant at a later time to enforce the same or any other provision of

this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

55. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order for a period of either (a) three years from the date of this Consent Order; or, (b) entry of an Order discharging the receiver from his responsibilities under the receivership order, whichever is longest.

56. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant.

57. Authority: Defendant hereby warrants that he was the CPO and/or owner of both JHM and FTAH, and that this Consent Order has been duly authorized by both JHM and FTAH and Defendant has been duly empowered to sign and submit this Consent Order on behalf of both JHM and FTAH.

58. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

59.     Defendant and Relief Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceeding they may not challenge the validity of this Consent Order.

THERE BEING NO JUST REASON FOR DELAY, the Clerk of the Court is hereby directed to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief.*

**IT IS SO ORDERED** on this _____ day of _____, 2015.

_____

**GRAHAM C. MULLEN**
**UNITED STATES DISTRICT JUDGE**

CONSENTED TO AND APPROVED BY:

*James Harvey Mason*
**JAMES HARVEY MASON**, individually

Date: _03/03/15_

*James Harvey Mason*
**THE JHM FOREX ONLY POOL (F/K/A**
**THE JHM FOREX ONLY POOL, LP), and**
**FOREX TRADING AT HOME**

Date: _03/03/15_

**BARRY R. BLANKFIELD**
Senior Trial Attorney
U.S. Commodity Futures Trading Commission

One of the Attorneys for Plaintiff
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0525
bblankfield@cftc.gov

Date: _____

**APPROVED AS TO FORM:**

_____

~~JOHN~~ A. FAGG, JR.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC  28202-4003
(704) 331-3622
johnfagg@mvalaw.com

Date: March 3, 2015

59.    Defendant and Relief Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceeding they may not challenge the validity of this Consent Order.

THERE BEING NO JUST REASON FOR DELAY, the Clerk of the Court is hereby directed to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty and Other Equitable Relief.*

**IT IS SO ORDERED** on this 23d day of April , 2015.

GRAHAM C. MULLEN
**UNITED STATES DISTRICT JUDGE**

CONSENTED TO AND APPROVED BY:

_____
**JAMES HARVEY MASON**, individually

Date: _____

**BARRY R. BLANKFIELD**
Senior Trial Attorney
U.S. Commodity Futures Trading Commission

One of the Attorneys for Plaintiff
525 West Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0525
bblankfield@cftc.gov

_____
**THE JHM FOREX ONLY POOL (F/K/A**
**THE JHM FOREX ONLY POOL, LP), and**
**FOREX TRADING AT HOME**

Date: _____

Date: 14 APRIL 2015

21